IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JOSLYNE E. DAVENPORT**                                                                                    **PLAINTIFF**

**V.**                                                          **CASE NO. 3:14-CV-00671-CWR-LRA**

**NISSAN NORTH AMERICA, INC.,**                                                         **DEFENDANTS**
**KELLY SERVICES, INC., AND**
**FREDAS (FRED) TATE**

**MEMORANDUM OPINION AND ORDER**

Before the Court are defendants' motions for summary judgment. Docket Nos. 43 and 48. The motions are fully briefed and ready for adjudication. Having considered the parties' arguments, evidence, and applicable law, the defendants' motions are GRANTED.

**I.   Factual and Procedural History**

Plaintiff was an employee of defendant Kelly Services, Inc. from August 2012 until January 2014. During her employment, Davenport was assigned to the Nissan manufacturing plant located in Canton, Mississippi and worked as a production associate. As part of her training, Davenport received and read an employee handbook that included all of the policies and procedures that governed her employment by Kelly Services while working at the Nissan plant. The Nissan plant is owned and operated by defendant Nissan North America, Inc. In September 2013, Fredas (Fred) Tate was hired by Nissan to work as a line leader. When Tate was hired, he was required to pass training courses related to Nissan's anti-harassment policy.

Tate and the plaintiff worked the third shift together. Davenport worked on the line installing brakes and Tate was the line leader. They were both supervised by Aaron Rodgers. Plaintiff alleges that sometime in September or October 2013 (apparently within weeks of

starting his new job), Tate exposed his penis to her while they were working. Following this incident, Davenport informed another employee, Lucynthia Breeden, about what had occurred. When Tate walked up to Breeden and the plaintiff, Breeden asked him why he exposed himself. He responded that Davenport was not supposed to tell anyone. At that time, Davenport did not inform her supervisor or any other employees of Tate's inappropriate conduct. Tate and Davenport continued to work together for the next two months, until December 18, 2013, when she told Dwight Turner, a Nissan employee, about what had occurred. Turner then reported the incident to the human resources department at Nissan and Kelly Services. Davenport contends that during those two months after the incident, Tate made sexual references during conversations in the break room and displayed photos of his genitals in the presence of other Nissan and Kelly employees.

Upon learning of Tate's alleged misconduct on December 18, defendants initiated an immediate investigation. Nissan interviewed Breeden, Rodgers, and Davenport as well as other employees as part of their investigation. Davenport alleges that on December 20, Tate again engaged in conversations of a sexual nature with other employees in the break room. However, plaintiff did not tell anyone of the subsequent behavior until January 13, 2014. The Nissan plant shut down for the holiday season on December 21, 2013 and did not reopen until January 6, 2014. Once the plant resumed operations, Nissan continued its investigation; however, Davenport did not return to work until January 13, 2014. When she returned to work, she had been reassigned to another area where she worked with a different line leader and supervisor. On January 13, Davenport alleges she saw Tate and her former supervisor, Rodgers, in her new area and although they did not speak to her, they glared at her. Davenport resigned the next day, January 14, via e-mail. Nissan continued its investigation; Tate's indecent exposure was not

confirmed, but Nissan discovered other misconduct during its investigation and terminated Tate on February 5, 2014.[1]

On March 6, 2014, Davenport filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) concerning Tate's indecent exposure. The EEOC issued a Notice of Right to Sue letter on May 30, 2014 and Davenport filed this action against Tate, Kelly Services, and Nissan. Tate never responded to the Complaint and the clerk entered an Entry of Default. Docket No. 46. Kelly Services and Nissan both filed separate motions for summary judgments. Docket Nos. 43 and 48. Kelly Services and Nissan both argue that Davenport cannot establish a viable claim for any of the counts alleged in the complaint.

## II.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would

---

[1] Tate appealed his termination and was rehired, but he was demoted, received reduced pay, and a was issued a final written reminder.

prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

### III.     Discussion

In plaintiff's response, she fails to address the defendants' arguments related to her state law claims or the Title VII constructive discharge claim. Therefore, she concedes summary judgment on those claims and the court will only evaluate the sexual harassment claim. *See Sanders v. Sailormen, Inc.* 2012 WL 663021, *3 & n.30 (S.D. Miss. Feb. 28, 2012).

Under Title VII, the liability of an employer for work place harassment hinges upon the accused harasser's status in relation to the plaintiff. *Vance v. Ball State Univ.,* 133 S.Ct. 2434, 2439 (2013). An employer is only liable when the accused harasser is the plaintiff's coworker if it was "negligent in controlling working conditions." *Id.* However, if the accused harasser is a supervisor and the harassment results in a tangible employment action, then the employer can be held strictly liable. *Id.*

In order to establish a prima facie case for a hostile work environment claim, the plaintiff must show (1) she is a member of a protected class; (2) she was the victim of unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition or privilege of the plaintiff's employment; and if the harassment was by a co-worker, the plaintiff must also demonstrate (5) that the employer knew or should have known of the harassment and failed to take prompt action. *Wiggins v. St. Luke's Episcopal Health Sys.,* 517 Fed. App'x 249, 251 (5th Cir. 2013).

First, the Court will examine whether Tate should be classified as a coworker or supervisor. Davenport's's primary argument in her response to defendants' motions for summary judgment is that there is a question of material fact as it relates to the possible supervisory status

of Tate. In support of Tate's status as plaintiff's supervisor, Davenport contends that Tate's failure to respond to the allegations in the complaint constitutes an admission of all the allegations in the complaint. Davenport cites no case law that supports the argument that Tate's failure to respond to the allegations in the complaint can be used as evidence on the merits against the remaining defendants. In fact, "[d]eemed admissions by one defendant cannot be used against co-party." *Becerra v. Asher,* 105 F.3d 1042, 1048 (5th Cir. 1997). Although Davenport has filed a motion for default judgment regarding Tate, Docket No. 47, the court has discretion as to whether or not to grant default judgment against Tate.[2] *Flores v. Koster,* 2013 WL 357610, *2 (N.D. Tex. January 3, 2013) (internal citation omitted).

In addition, Davenport attaches excerpts from her deposition and the deposition of her supervisor, Aaron Rodgers, to further support her argument that there is a question of material fact as to Tate's supervisory status. Unfortunately, she makes no specific assertions as to particular testimony that bolsters this argument. Upon reviewing the attached excerpts, the Court does not agree that the evidence present creates a question of fact concerning Tate's supervisory status. According to Davenport's own testimony, she would report issues related to productivity to Tate. Docket No. 50-1 at 49:3–14. Additionally, Davenport testified she would report issues she had with another technician to Tate, but he would not have been the appropriate person to whom to report an incident of serious misconduct, such as if someone else had exposed himself to her. *Id.* at 49:15–23.

Rodgers described Tate's duties as, "A line leader basically assists the supervisor in helping to run the zone, bringing issues that some of the employees may have in regards to doing their work, putting their parts on. They also make repairs to any parts that the technicians can't, I guess, complete." Docket No. 50-2 at 38:23–25-39:1–4. Rodgers testified that Tate never

---

[2] Plaintiff's motion is still pending before the Court and the Court will issue a separate order regarding the motion.

5

assisted him with resolving a conflict between employees. *Id.* at 41:5–13. Rodgers also stated that Tate would inform him if an employee wants to speak to him, and Rodgers might instruct Tate on how to repair a particular part. *Id.* at 40:11–21.

A person is considered a supervisor if he or she can take tangible employment actions against the employee. *Vance,* 133 S.Ct. at 2443. A tangible employment action is defined as " a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Here, Davenport has presented no evidence that Tate could take any tangible employment actions towards her. In fact, based on the deposition testimony presented, at most, he could tell her actual supervisor, Rodgers, that she needed to speak with him or assist with the repair of a part on the production line. Tate had no authority to hire, fire, discipline or take any other action against Davenport. Therefore, he is considered a co-worker for the purposes of the analysis of the sexual harassment claim.

Next, the Court turns to whether there is a question of fact concerning any of the elements needed to demonstrate a prima facie case of sexual harassment. Defendants do not contest that Davenport satisfies the first three elements, but argue she fails to satisfy the fourth and fifth elements, both of which are required since Tate was her coworker, and not her supervisor. Docket Nos. 44 at 6 and 49 at 10. Davenport's response fails to address defendants' arguments regarding the fourth and fifth elements. In order to avoid summary judgment, the party must identify admissible evidence in the record that demonstrates a factual dispute. Fed R. Civ. P. 56(c)(1). The Fifth Circuit has held "[w]ith respect to an issue on which the nonmovant would bear the burden of proof at trial, if the movant for summary judgment correctly points to

the absence of evidence supporting the nonmovant with respect to such an issue, the nonmovant in order to avoid an adverse summary judgment on that issue, must produce sufficient summary judgment evidence to sustain a finding in its favor on the issue." *Tran Enterprises, LLC v. DHL Exp. (USA), Inc.,* 627 F.3d 1004, 1010 (5th Cir. 2010).

In this case, it would fall upon Davenport to establish the prima facie case for her sexual harassment claim. Defendants' briefs in support of their motions for summary judgment cite to several cases related to the fourth element. It is well established in this Circuit that in order for harassment to affect a term, condition or privilege of a plaintiff's employment, it must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Stewart v. Miss. Transp. Comm'n,* 585 F.3d 321, 330 (5th Cir. 2009). Defendant Nissan points to several cases from multiple circuits, where exposure of genitalia coupled with sexually suggestive comments was not sufficient to satisfy this requirement. Docket No. 44 at 7–8. Further, Nissan cites additional Fifth Circuit cases that found similar behavior as not severe. *See Shepherd v. Comptroller of Pub. Accounts of the State of Texas,* 168 F.3d 871(5th Cir. 1999); *Hockman v. Westward Communications, LLC,* 407 F.3d 317 (5th Cir. 2004); *Moyer v. Jos. A. Bank Clothiers, Inc.,* 601 F. App'x 247 (5th Cir. 2015). Among the cases Nissan cites are two cases that would not support Tate's conduct as pervasive. *See Moyer,* 601 F. App'x 247; *Russell v. University of Texas Permian Basin,* 234 F. App'x 195 (5th Cir. 2007).[3] Based on these cases, defendants assert that Tate's one-time exposure of his genitalia does not constitute conduct that is severe or pervasive enough to alter a term or condition of Davenport's employment. Davenport, who is required, to show how Tate's conduct satisfies this element, offers no evidence in her response brief. In fact, her memorandum in

---

[3] Defendant Kelly Services points to many of these same cases in its brief supporting its motion for summary judgment. Docket No. 49 at 10-14.

response to defendants' motion for summary judgment is only three a half pages and focuses solely on Tate's supervisory status. Docket No. 51. Davenport fails to offer any evidence that would demonstrate how Tate's alleged misconduct satisfies the severity or pervasiveness requirement. Further, Davenport limited her argument to Tate's supervisory status, and failed to make an alternate argument in the case that this Court found Tate was not her supervisor. As stated, this Court does not agree with Davenport's argument and finds that Tate was not her supervisor. Thus, in order to hold Nissan and/or Kelly Services liable, Davenport must show that defendants knew or should have known of the harassment and failed to take prompt remedial action. *Shepherd,* 168 F.3d at 873. Again, Davenport's response brief is silent on this point. The employer's action following the harassment complaint must be 'reasonably calculated' to end the harassment to be considered prompt remedial action. *Kreamer v. Henry's Towing,* 150 F. App'x 378, 382 (5th Cir. 2005) (internal citation omitted).

In the Complaint, Davenport alleges that Kelly Services and Nissan should have known about Tate's inappropriate conduct because "there were numerous instances where Defendant Tate's conduct was open in the workplace and should have been discovered by other supervisory personnel." Docket No. 1 ¶ 11. However, in her deposition, Davenport admits that the contents of her complaint were limited to the single instance where Mr. Tate exposed himself to her. Docket No. 43-1 at 47:1–16. The incident happened sometime in September or October 2013 and plaintiff did not report it until December 18, 2013. Upon receiving the report, Nissan and Kelly Services initiated an investigation and interviewed several employees, including the plaintiff. In one case, the Seventh Circuit referred to an investigation as "the hallmark of reasonable corrective action." *Cerros v. Steel Techs., Inc.,* 398 F.3d 944, 954 (7th Cir. 2005). A few days after the investigation began, the plant closed for the holiday season and plaintiff was reassigned

to another zone where she had a different line leader and supervisor when she returned to work in January 2014. Docket No. 49 at 16. Defendants' briefs detail the steps taken once they were aware of plaintiff's allegations. Docket Nos. 44 at 10–13 and 49 at 14–19. And, this Court has found that separating an employee from the alleged harasser by placing them on separate shifts is appropriate. *See Phillips v. Nissan North America*, No. 3:11-CV-00104-CWR-FKB, 2012 WL 2254274, at \*6 (S.D. Miss. June 14, 2012).

It is uncontested that the incident occurred in September or October 2013 and plaintiff did not report it until December 2013. When Davenport began employment, she received an employment handbook from Kelly Services that detailed specific policies and procedures related to her assignment to the Nissan plant in Canton, Mississippi. Davenport signed a form acknowledging she had received and read the handbook. Docket No. 43-1 at 60. Specifically, Davenport agreed to "immediately report any incidents that violate Kelly or Nissan policies. Any violation of these policies is grounds for termination of employment." *Id.* Her delay in reporting the incident prevented defendants from conducting an investigation more quickly. In fact, had plaintiff reported the incident immediately, as required by policy, it is likely none of the alleged break room conversations would have occurred. Davenport made no arguments in her response brief to explain why she waited approximately two months before reporting Tate's misconduct. She did not refute any of the case law or supporting evidence put forward by the defendants that they took immediate remedial action to address the alleged sexual harassment.

Davenport's response to defendants' motions for summary judgment does not address these arguments at all. She provides no rebuttal to defendants' contention that they took prompt remedial action to end the harassment. Further, because her complaint was limited to a single

9

incident, she offers no additional evidence to support the allegation that defendants should have known about Tate's inappropriate conduct.

Davenport bears the responsibility of proving the elements of her sexual harassment claim and must submit admissible evidence that raise a question of material fact to avoid summary judgment. Davenport's response to defendants' motion for summary judgment does not demonstrate a question of material fact.

IV. Conclusion

Defendants' motion for summary judgment is granted. A Final Judgment in accordance with this Order will be entered on this day.

**SO ORDERED**, this the 22nd day of October, 2015

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE